FILED

2015 May-12  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JULIE KAMINSKY AND** | ) | |
| **NANNETTE SCHUTTA,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:13-CV-1002-AKK** |
| | ) | |
| **PRUCO LIFE INSURANCE** | ) | |
| **COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Julie Kaminsky and Nannette Schutta Lennitt commenced this action seeking to enforce an insurance policy that Defendant Pruco Life Insurance Company[1] issued to David Schutta in April 2009 (to which Plaintiffs were beneficiaries). This dispute stems from certain representations that David Schutta—Ms. Kaminsky's ex-husband and Ms. Lennitt's then-fiancé—made when he applied for the policy. In particular, although Mr. Schutta's physician diagnosed him with skin cancer in March 2008, Mr. Schutta omitted this diagnosis from his application with Pruco. Subsequently, after Mr. Schutta died in August 2010, Pruco learned about Mr. Schutta's history of skin cancer, denied Plaintiffs' claim

---

[1] Plaintiffs also named various other defendants but have not served any of those defendants. *See* doc. 18.

for death benefits, and rescinded the policy. This led to Plaintiffs bringing this action against Pruco seeking a "declaration of ambiguity in policy language" and alleging breach of contract, bad faith and unfair practices in investigating the claim for death benefits, and intentional infliction of emotional distress in failing to promptly process the claim. *See* doc. 18.[2] Ms. Kaminsky and Pruco have both moved for summary judgment on the breach of contract claim, and Pruco also moved for summary judgment on the bad faith, unfair practices, and intentional infliction of emotional distress claims. Docs. 27, 31, 33. For the reasons below, the court will grant Pruco's motion for summary judgment and deny Ms. Kaminsky's motion.[3]

---

[2] Plaintiffs also seek a declaration that Pruco "waived the right to assert" any foundation for rescinding the policy other than the alleged misrepresentation and "is therefore estopped from asserting any other grounds in these proceedings." Doc. 18 at 19. The court need not make any such declaration because this is indeed the only grounds that Pruco asserts for rescinding the policy. *See* doc. 27.

[3] Pruco's motions to strike, docs. 36, 39, are **DENIED** because the evidence Pruco seeks to strike ultimately has no impact on the court's rulings in this case. Ms. Kaminsky's motion for extension of time to file her reply to Pruco's motion for summary judgment, doc. 43, is **GRANTED**. The court however is troubled by Ms. Kaminsky's assertion in her motion that "on May 6[th] she was informed by the Clerk's office that pro se parties are no longer allowed to utilize the CM/ECF system and her filing had been removed." Doc. 43 at 1. This statement is simply false because the clerk's office has repeatedly informed Ms. Kaminsky that she could not use the CM/ECF system. In fact, as a result of her many conversations with the clerk's office, Ms. Kaminsky reached out to the undersigned's law clerk assigned to this case with the following message on April 22, 2015:

> I'm not sure if I explained my predicament very well when we last spoke. I have been suspended by the Alabama Bar, and technically am not supposed to use cm-ecf system to file my documents in this case . . . . However, tomorrow is my deadline for filing a response to Pruco's Motion for Summary Judgment. I really need every minute to finish writing. If Judge requires that I refrain from using the system it, in effect, shorts me a full day of writing time, as I would have to leave Auburn before noon tomorrow in order to avoid a repeat of my previous disaster. Is it possible for Judge Kallon to give me permission to use the cm-ecf system in this case? Do you think that he would consider it?

The court denied Ms. Kaminsky's request by email and directed her to "mail [her] response to the clerk's office rather than using the CM/ECF system." Put simply, Ms. Kaminsky knew well prior to the May 5, 2015 deadline that she was precluded from using the CM/ECF system, and yet decided to ignore this court's directives and then decided to misrepresent facts in a motion. The court has no idea why the Alabama State Bar suspended Ms.

# I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it

---

Kaminsky, and frankly based on her conduct, has reservations about Ms. Kaminsky's reinstatement. In the event, however, that Ms. Kaminsky is reinstated, the court hopes that Ms. Kaminsky will take seriously her obligations under Alabama Rule of Professional Conduct 3.3 (candor toward the tribunal).

in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

The parties agree that Mr. Schutta never disclosed his March 2008 diagnosis of malignant melanoma in his application for life insurance with Pruco. In fact, Plaintiffs do not dispute that Mr. Schutta on three occasions answered "no" to questions asking if he had ever been diagnosed with "cancer, tumor leukemia, melanoma, or lymphoma." *See* docs. 33 at 10; 33-1 at 3; (Pruco Underwriting Telephone Interview at 9:00). Nonetheless, Plaintiffs challenge Pruco's denial of their claim and rescission of the policy based on their contention that Mr. Schutta's low "intelligence level" prevented him from fully comprehending Pruco's questions. *See* doc. 31 at 4. According to Plaintiffs, Mr. Schutta was "not a well-

educated man," and his "conversational vocabulary was quite limited unless the conversation concerned NASCAR, hunting, cooking, or heavy highway construction." Doc. 31-1 at 54. Because of his allegedly limited vocabulary, Mr. Schutta frequently "used a word that did not mean what he was trying to convey," and often "did not understand what the other participant in [a] conversation was trying to convey to him." *Id*. As such, Plaintiffs' position is that Mr. Schutta—in answering "no" to three separate questions asking him about any prior diagnosis of cancer—answered "to the best of his knowledge and belief." *See* docs. 31 at 46; 33 at 10; 33-1 at 46.

Plaintiffs also point out that, during the application process, Mr. Schutta disclosed to Pruco the identity of the physician who diagnosed and treated his skin cancer. *See* doc. 33-1 at 3. A review of Mr. Schutta's application shows that he in fact listed a Dr. Marder as his treating physician, provided Dr. Marder's contact information, and stated that the reason for his last visit was a "check-up." *Id*. However, the record contains no evidence that Mr. Schutta mentioned that Dr. Mader treated him for skin cancer. Nonetheless, Plaintiffs presumably believe Mr. Schutta's mention of getting a check-up from Dr. Marder is sufficient to place Pruco on notice of Mr. Schutta's skin cancer. *See id*. at 8 n. 10. In light of this, Plaintiffs believe that Pruco "had the opportunity to request Dr. Marder's records before approving Mr. Schutta's application." *Id*. In any event, Pruco did not

request Mr. Schutta's medical records (and therefore did not learn of Mr. Schutta's history of skin cancer) prior to issuing him a life insurance policy on April 13, 2009. *See* doc. 28-1 at 4. Instead, Pruco sought medical records after Mr. Schutta's death in August 2010[4] as part of Pruco's "contestable death claim investigation," which is a "routine procedure whenever an insured dies within the first two years of coverage." Docs. 28-1 at 4; 28-2 at 3; 33-2 at 16. Ultimately, based on Pruco's findings during its investigation of the prior cancer diagnosis, Pruco denied Plaintiffs' claim for death benefits, rescinded the policy, and refunded past premium payments to Plaintiffs. Doc. 33-2.

## III. ANALYSIS

At the heart of this dispute is whether Mr. Schutta's failure to disclose his history of cancer justified Pruco's rescission of the policy and denial of death benefits. Pruco seeks summary judgment on the breach of contract, "declaration of ambiguity in policy language," bad faith, unfair practices, and intentional infliction of emotional distress claims, contending that Mr. Schutta's failure to disclose his history of cancer justified Pruco's actions. *See* doc. 26. Ms. Kaminsky seeks partial summary judgment with respect to the breach of contract claim contending that Mr. Schutta did not make any material misrepresentation on the application. *See*

---

[4] While there is no record evidence establishing the cause of Mr. Schutta's death, Ms. Kaminsky maintains Mr. Schutta died of "causes undeniably unrelated to his medical history with Dr. Marder's office. From Mr. Schutta's last visit with Dr. Marder in January 2009 through his death, he never sought treatment for another suspicious skin lesion." Doc. 31 at 9.

doc. 31. In responding to Pruco's motion, Ms. Kaminsky concedes that "[t]here is no dispute as to the material facts in this case" and that the court may resolve this case on summary judgment.[5] Doc. 35 at 1. The court will address the breach of contract and ambiguity claims first and then turn to the bad faith, unfair practices, and intentional infliction of emotional distress claims.

## A. Breach of contract and ambiguity claims

Plaintiffs claim that Pruco breached the insurance policy in denying death benefits, and that the application questions regarding Mr. Schutta's history of cancer were ambiguous (presumably justifying Mr. Schutta's failure to disclose his history of cancer). *See* doc. 18 at 15-16. As an initial matter, the parties agree that Florida law applies to the contract claims because the "policy was executed in Florida." *See* docs. 27 at 10; 31 at 46-48; 33 at 1; 33-1 at 17. Indeed, under Alabama law, "the law of the state wherein the contract was executed governs questions regarding validity and interpretation of the contract." *Am. Nonwovens, Inc. v. Non Wovens Eng'g, S.R.L.*, 648 So. 2d 565, 567 (Ala. 1994); *see also Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446 n. 6 (11th Cir. 1998) ("A district court must apply the choice-of-law rules of the state in which it sits."). Relevant here, Florida law provides that misrepresentations in a policy application

---

[5] Although Ms. Lennitt failed to respond to Pruco's motion for summary judgment, the court has carefully reviewed all record evidence, resolved all inferences in favor of Plaintiffs, and considered the merits of the motion in reaching its decision. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

"may prevent recovery under [a] contract or policy" if (a) the misrepresentation is "material to the acceptance of the risk or to the hazard assumed by the insurer," or (b) had the insurer known the true facts, "the insurer in good faith would not have issued the policy or . . . would not have issued it at the same premium rate." FLA. STAT. § 627.409(1)(a)-(b); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532, 1536 (11th Cir. 1993) ("Misrepresentations and incorrect statements in a policy application bar recovery under the policy where, *inter alia,* they are material to the risk assumed by the insurer or the insurer would not have offered the same terms had it known the truth.") (citing FLA. STAT. § 627.409(1)(a)-(b)). The points of contention here are whether Mr. Schutta's statements were "misrepresentations," and if yes, whether they were "material" under Section 627.409(1)(a). For the reasons below, the court agrees with Pruco that Mr. Schutta's statements were material misrepresentations justifying denial of benefits and rescission of the insurance policy. Before reaching the Section 627.409 analysis, however, the court will first address Plaintiffs' contention about the purported ambiguity of the application questions.

      *1. Alleged ambiguity of application question*

      Under Florida law, "interpretation of an insurance contract is a matter of law to be decided by the court," and an "insurance contract is deemed ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made."

*Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1539 (11th Cir. 1995).

Furthermore, "[a] provision is not ambiguous simply because it is complex or

requires analysis." *Garcia v. Fed. Ins. Co.,* 969 So. 2d 288, 291 (Fla. 2007). Here,

Mr. Schutta filled out two written application forms that asked whether he had

"been diagnosed with or treated by a member of the medical profession for . . .

cancer, tumor, leukemia, melanoma, or lymphoma." Doc. 33 at 10; 33-1 at 3. The

written application offered Mr. Schutta two answer choices: yes, or no. Doc. 33 at

10; 33-1 at 3. In addition to the written application, Pruco interviewed Mr. Schutta

over the phone and asked the exact same question orally. (Telephone Interview at

9:00). The court finds the questions susceptible to only one interpretation—

whether the applicant has a history of cancer. As such, the court rejects Plaintiffs'

claim that the application was ambiguous.

> ### 2.   *Whether Mr. Schutta's statements constitute "misrepresentations"*

Turning to the Section 627.409 analysis, Plaintiffs contend that Pruco's

application—which required Mr. Schutta to certify that he answered the

application questions "to the best of his knowledge and belief," *see* doc. 33 at 12—

"incorporated the 'knowledge and belief' standard," doc. 31 at 36. According to

Plaintiffs, under this "lowered analytical" standard, "[i]t will be impossible for

Pruco to prove any material misrepresentation by Mr. Schutta" because this

"knowledge and belief standard" requires only a showing that the applicant "knew

and believed at the time he answered the questions in the application" that his answers were truthful. Doc. 33 at 1. Moreover, Plaintiffs assert, "Mr. Schutta did not know the meaning of the word melanoma when he answered the application questions" and therefore could not have made any misrepresentation about his history of skin cancer. *Id.*

Plaintiffs are generally correct that the "knowledge and belief" language in Pruco's application forms "imposed a different requirement of accuracy than that provided in [S]ection 627.409." *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1364 (11th Cir. 1990); *see also Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998) (explaining that insurer "chose to draft and incorporate a different 'knowledge and belief' standard in its application, thereby bypassing the rigid statutory standard" of Section 627.409). Under the "knowledge and belief" standard, "[w]hat the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but *only so far as that belief is not clearly contradicted by the factual knowledge on which it is based.*" *Id.* (emphasis added) (citations, alterations, and internal quotation marks omitted). In other words, whereas Section 627.409 applies even to unintentional misrepresentations, *see Cont'l Assur. Co. v. Carroll*, 485 So. 2d 406, 408 (Fla. 1986), the less rigid "knowledge and belief standard" requires an *intentional* misrepresentation, *see Green*, 704 So. 2d at 1391 (explaining that "unknowing

misstatements" do no justify rescission of an insurance policy under the
"knowledge and belief" standard); *Mims v. Old Line Life Ins. Co. of Am.*, 46 F.
Supp. 2d 1251, 1255 (M.D. Fla. 1999) ("knowledge and belief" language in
insurance application requires showing that insured "intentionally made the
misrepresentations that [insurer] claims as grounds for rescission"). In that regard,
Plaintiffs' reliance on the "knowledge and belief" language overlooks that Mr.
Schutta's answers were indeed "intentional" misrepresentations because they
undeniably contradicted his factual knowledge of his skin cancer diagnosis. More
specifically, even accepting that Mr. Schutta did not know the meaning of the word
"melanoma," by Plaintiffs' own contentions, Mr. Schutta "knew that he had been
treated by Dr. Marder for 'skin *cancer*'" and frequently referred to his diagnosis as
"skin *cancer*." Docs. 31 at 3; 33 at 1 (emphasis added); *see also* doc. 45 at 3 ("In
our frequent phone conversations . . . he always used the words "skin cancer[.]").[6]
Yet, despite this knowledge, and as Plaintiffs agree, in responding to application
questions asking whether Mr. Schutta had been diagnosed with "*cancer*, tumor
leukemia, melanoma, or lymphoma," Mr. Schutta answered "no" on three
occasions. Based on this undisputed evidence, the court rejects Plaintiffs'
contention that Mr. Schutta answered to "the best of his knowledge and belief."

---

[6] Along the same lines, Plaintiffs' position that Mr. Schuuta "knew he had skin cancer . . . [but] believed he was cured," doc. 44 at 1; *see also* doc. 45 at 3, misses the mark because Pruco's application asked if Mr. Schutta "had ever been diagnosed" with cancer—which is an entirely different question than one asking whether he had previously been diagnosed with skin cancer that is now cured. For the same reason, Plaintiffs' reliance on *Green*, *id.* at 3, is misplaced because the court in that case ruled in favor of the insured in part because the insured "did not know the medical diagnosis for his problems," 704 So. 2d at 1391.

*See Joseph v. Zurich Life Ins. Co. of Am.*, 159 F. App'x 114, 117 n. 3 (11th Cir. 2005) (under the knowledge and belief standard, "the insurer may make [a] showing [of misrepresentation] on summary judgment by establishing that there were underlying facts known to the applicant that clearly contradicted the information on the application") (citing *Mimms*, 46 F. Supp. 2d at 1256 ("[E]ven if [the insured] were alive and able to testify regarding [his] beliefs as to the veracity of information [he] gave . . . , if the underlying facts known to [him] were in clear contradiction of [his] testimony, [his] stated beliefs would not be credited and [he] would be deemed to 'know' of the misrepresentations.")). Therefore, the court rejects Plaintiffs' argument that Mr. Schutta did not knowingly make a false statement on his application.

### 3. *Whether the misrepresentations were material*

To establish materiality under Section 627.409(1)(a), the insurer must show that "a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy." *Mimms*, 46 F. Supp. 2d at 1256. Plaintiffs contend that Mr. Schutta's misrepresentations are not material because Pruco "routinely accepted such risks." Doc. 31 at 48. Even if true, the relevant inquiry is whether the information "might reasonably have influenced [Pruco] in deciding whether to accept the risk." *Carter v. United of Omaha Life Ins.*, 685 So. 2d 2, 6 (Fla. Dist. Ct. App. 1996). Significantly, in general,

"[m]isrepresentations related to an insured's medical history or condition obviously affect an insurer's risk in issuing a life insurance policy." *Mimms*, 46 F. Supp. 2d at 1256; *see also Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 565 (11th Cir. 1990) (under Florida law, "[m]isrepresentations on an insurance application are material for preventing recovery when the misstatement obviously affects the risk of insurance"). In fact, even according to Plaintiffs' own evidentiary submissions consisting of general underwriting practices, insurance applicants with a history of skin cancer "must be underwritten quite carefully." Doc. 31 at 13. Specifically, the underwriting process requires review of an applicant's medical records to determine "the thickness of the melanoma" and to properly "prognosticat[e] the mortality risk." *Id*. Consistent with these standard industry practices, where an applicant has a history of skin cancer, Pruco's underwriting procedures require retrieving additional documentation, including a pathology report, which Pruco relies on to determine the classification of malignant melanomas based on the tumor's characteristics—i.e., thickness, level of invasion, growth pattern, etc. *Id*. at 27, 30, 32. Based on a tumor's classification, Pruco then determines whether to issue a policy and at what premium rate. *See id*. at 28. In light of this process, it is clear to the court that knowledge of whether an applicant has a history of skin cancer is indeed "material to the acceptance of the risk" under Section 627.409(1)(a) since the information would place a "careful

insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy."[7] *Mimms*, 46 F. Supp. 2d at 1256; *Fernandez*, 906 F.2d at 565. Accordingly, based on Mr. Schutta's material misrepresentation, the court concludes that Pruco's decision to deny benefits and rescind the policy was justified pursuant to Section 627.409. *See Joseph*, 159 F. App'x at 117 n. 3, 118 (11th Cir. 2005) (affirming grant of summary judgment on breach of contract claim where insured's application misrepresented facts that "clearly contradicted" the insured's "knowledge and belief" and that were material to the insurer's "assessment of the risk").[8] For these reasons, the court will grant summary

---

[7] The court rejects Plaintiffs' argument that Mr. Schutta placed Pruco on notice that it should retrieve his medical records by listing on his application that he had visited Dr. Marder for a check-up because, under Florida law, "[a]n insurer is entitled to rely on the truthfulness of an applicant's statement of medical history and has no duty to make further inquiries." *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So. 2d 1032, 1033 (Fla. Dist. Ct. App. 1988).

[8] As further support for this conclusion, the court notes that, according to Pruco's underwriting manager, Dorothy Diehl, "if Mr. Schutta had disclosed his treatment for [skin cancer], Pruco would have obtained and reviewed Mr. Schutta's medical records prior to issuing the policy." *Id.* at 5. Based on the medical records—which in addition to the March 2008 malignant melanoma also revealed multiple dysplastic nevi—Pruco "would have issued the policy with a Special Class A rating" and a higher premium pursuant to its underwriting manual. *Id*; doc. 28-2 at 2-4. This also justifies Pruco's decision to deny benefits and rescind the policy under Section 627.409(1)(b). *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Sahlen*, 807 F. Supp. 743, 747 (S.D. Fla. 1992) *aff'd and remanded sub nom. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532 (11th Cir. 1993) (misrepresentations justifies denial of benefits where insurer "has presented undisputed evidence that the [policy] would not have been issued at the same premium rate"); *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So. 2d 1032, 1033 (Fla. Dist. Ct. App. 1988) (misrepresentation justifies denial of benefits where "[t]he undisputed affidavits filed by the insurer state that had the deceased given the true facts the insurance policy . . . would not have been issued on the same terms"). While Plaintiffs contend that Pruco "would have written the policy exactly as it actually did" rather than at a higher premium, doc. 35 at 8, Plaintiffs do not support their position with any evidence based on Pruco's policies or evidence from underwriting experts. Instead, Plaintiffs rely on opinions from dermatologists and oncologists as to how insurance companies generally *should* underwrite a policy given Mr. Schutta's history—not how Pruco actually *would* underwrite the policy. *See* docs. 33-2 at 17-18; 35 at 22-25. Facts, rather than speculation or conjecture, are required to defeat a motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (citation and internal quotation marks omitted).

judgment in Pruco's favor with respect to the breach of contract and the
"declaration of ambiguity" claims.

### B. Bad faith, unfair practices, and intentional infliction of emotional distress

Under Alabama law, a court decides "the substantive rights of an injured
party according to the law of the state where the injury occurred." *Fitts v.
Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991). In this case, Ms.
Kaminsky was a resident of Alabama when Pruco denied death benefits, *see* doc.
33-2 at 16, and Ms. Lennitt was a resident of Florida at the time, *see* doc. 33-2 at
11. Therefore, the court concludes Ms. Kaminsky's injuries occurred in Alabama
and will apply Alabama law to her tort claims and Florida law to Ms. Lennitt's tort
claims.

#### 1. Bad faith and unfair practices

Plaintiffs claim that Pruco acted in bad faith and violated the Florida Unfair
Trade Practices Act in investigating the claim. However, because, as the court
explained above, Pruco's denial of death benefits was justified, the bad faith claims
fail under Alabama law and Florida law. *See State Farm Fire & Cas. Co. v.
Brechbill*, 144 So. 3d 248, 260 (Ala. 2013), *reh'g denied* (Jan. 17, 2014) ("A bad-
faith-refusal-to-investigate claim cannot survive where the trial court has expressly
found as a matter of law that the insurer had a reasonably legitimate or arguable
reason for refusing to pay the claim at the time the claim was denied."); *Blanchard*

*v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."). Likewise, Plaintiffs' claims under the Florida Uniform Trade Practices Act fail because "a party cannot pursue [such] a cause of action for unfair settlement practices until the party has determined that it is entitled to recover under the insurance contract at issue." *Progressive Am. Ins. Co. v. Rural/Metro Corp. of Florida*, 994 So. 2d 1202, 1208 (Fla. Dist. Ct. App. 2008). For these reasons, the court will grant summary judgment in favor of Pruco on these claims.

    2.  *Intentional infliction of emotional distress*

The intentional infliction of emotional distress claims (more commonly known as "outrage" claims in Alabama) also fail because both Florida and Alabama law require a showing that Pruco subjected Plaintiffs to "extreme" and "outrageous" conduct that goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized society." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011); *Aguilera v. Inservices, Inc.*, 905 So. 2d 84, 92 (Fla. 2005). In the insurance claim context, the Alabama Supreme Court has only recognized an outrage claim where the insurer's conduct in coercing settlement of a claim for benefits was "so horrible, so atrocious, [and] so barbaric . . . that no civilized

person could be expected to endure the acts committed without suffering mental distress." *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 141 (Ala. 1983) (finding outrage where investigators for the insurer threatened bodily injury to insured and his children and held him at gunpoint to coerce settlement of his insurance claim). While Plaintiffs believe that Pruco's employees acted "recklessly" in failing to promptly process the claim for death benefits, under Alabama law, insurers "ha[ve] the right to investigate . . . major claim[s] . . . and to question those persons who ha[ve] knowledge of [the insured's] prior medical history." *Kizziah v. Golden Rule Ins. Co.*, 536 So. 2d 943, 949 (Ala. 1988) (granting summary judgment on outrage claim where insurer investigated the claim and denied benefits based on misrepresentation in application). Along the same lines, under Florida law, a party is "never liable [for intentional infliction of emotional distress] . . . where [it] has done no more than to insist upon [its] legal rights in a permissible way." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). This is precisely what Pruco did. After Plaintiffs filed a claim for death benefits in early October 2010, Pruco sought Mr. Schutta's medical records and interviewed Plaintiffs within one month, and lawfully denied benefits on December 9, 2010. *See* docs. 18 at 9; 33-2 at 3-11. The court finds no evidence that Pruco engaged in "extreme" or "outrageous" conduct at any point during this

process. For these reasons, the court will grant summary judgment on Plaintiffs'

claims for intentional infliction of emotional distress.


## IV. CONCLUSION

For the reasons above, the court concludes that summary judgment in

Pruco's favor is appropriate.

**DONE** the 12th day of May, 2015.


_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE